811 So.2d 1160 (2002)
James F. FOSTER
v.
RABALAIS MASONRY, INC.
No. 01-1394.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
Rehearing Denied April 10, 2002.
*1161 Jan P. Christiansen, Hudson, Potts & Bernstein, Monroe, LA, for Defendants/Appellees Rabalais Masonry, Inc., Louisiana Workers' Compensation Corporation.
W. Jay Luneau, Luneau Law Office, Alexandria, LA, for Plaintiff/Appellant James F. Foster.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and OSWALD A. DECUIR, Judges.
DECUIR, Judge.
Claimant appeals the dismissal of his workers' compensation claim. For the reasons that follow, we affirm.

FACTS
The claimant, James Foster, was employed by Rabalais Masonry, Inc. as a maintenance man for Hyland Mobile Home Park operated by Ruby Rabalais Campbell. The parties stipulated that he was injured in the course and scope of his employment while installing a telephone pole next to a mobile home. Shortly after he was injured in March of 1999, he began seeing his brother-in-law, Dr. Nelson, a chiropractor. Dr. Nelson treated Foster conservatively, but did not place him under work restriction at the time.
On June 23, 1999, Foster began seeing Dr. Mark Dodson, an orthopaedic surgeon. Foster's right shoulder was x-rayed, and a preliminary diagnosis of right shoulder rotator *1162 cuff tendinitis was made, and an MRI recommended. On July 21, 1999, Dr. Dodson authorized a return to work at sedentary duties. An inquiry was made, and the employer had no such job available at that time. On July 27, 1999, an MRI was done which showed normal rotator cuffs; the radiologist suspected a small Hills Sachs lesion or tiny subchondral cysts. On July 29, 1999, Dr. Dodson saw Foster again and noted some improvement and released him to light duty. On September 16, 1999, Dr. Dodson noted further improvement and released Foster to medium duty.
In November of 1999, Rabalais Masonry's compensation carrier, Louisiana Workers' Compensation Corporation, contacted Ruby Rabalais Campbell about a medium duty position for Foster. Charles Smith, a vocational counselor, met with Campbell and discussed a modified job, examined and weighed the tools to be used, and prepared an assessment of the previous job and modified job. These were presented to Dr. Dodson, who approved the modified job on November 23, 1999.
Smith, Campbell, and Foster met concerning the modified job. Foster acknowledged in his testimony that he was told to work at his own pace and rest as needed. Foster returned to work in early December, and his workers' compensation benefits were subsequently terminated. His first day back he was instructed to clean up a vacant mobile home lot. Despite the availability of a leaf blower, Foster raked for eight straight hours. The next day he was instructed to clean up along a ditch and again raked for eight hours. On the third day, he was again assigned a cleanup project but stopped after approximately four hours. He told the office manager that he was leaving and has not returned to work since.
Foster testified that no time limit was placed upon him for the clean-up jobs and that no one was standing over him to assure that he worked constantly. He also testified that he never informed Campbell that the job was causing him discomfort or asked for an alternate assignment.
Based on these facts, the trial court concluded that Foster was not entitled to supplemental earnings benefits and dismissed his claim. Foster lodged this appeal.

STANDARD OF REVIEW
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep't of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).

SUPPLEMENTAL EARNINGS BENEFITS
Foster first contends that the workers' compensation judge erred in failing to award supplemental earnings benefits (SEB). We disagree.
*1163 An employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La.R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733. "The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation law is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEB or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee in his or the employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); Daigle, 545 So.2d 1005.
Recognizing that the appellate courts were applying inconsistent standards in determining whether the employer had met its burden of proof, the supreme court, in Banks v. Indus. Roofing & Sheet Metal, 96-2840 (La.7/1/97); 696 So.2d 551, established certain minimum standards. The court said:
[W]e conclude that an employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Banks, 696 So.2d at 557
Applying this minimum standard to the instant case, we conclude that the hearing officer was not manifestly erroneous or clearly wrong in finding that Rabalais Masonry had presented sufficient competent evidence to carry its burden. Rabalais Masonry clearly established the existence of a job within Foster's capabilities. Foster was offered a modified job approved by his treating physician, at his previous place of employment. He was instructed to work at his own pace and was given no time deadlines to complete his tasks. In spite of this, he chose to exceed his own work restrictions. He never complained about his assigned task and quit his job without ever raising the issue with his employer. The medical records produced indicated that Foster had been released to medium-duty work. Foster argues that Dr. Nelson was not consulted about his modified job, and testified at the trial that raking leaves for a sustained period would violate his job restrictions. The workers' compensation judge noted that Dr. Nelson is the claimant's brother-in-law and also testified that even a healthy person could be injured by the kind of sustained raking activity Foster undertook.
The parties stipulated that Foster's average weekly wage, while employed, was *1164 $320.00. Rabalais Masonry reduced Foster's wage from $8.00 per hour to $7.50 per hour in the modified job. This is still greater than 90% of his pre-injury wage. Accordingly, Rabalais Masonry met the second minimum standard of establishing Foster's expected earnings.
Finally, Rabalais Masonry established that Foster could return to the job he left which was modified to accommodate his injury. Therefore, we conclude that the workers' compensation judge's finding that Rabalais Masonry had carried its burden of proof to defeat Foster's claim for supplemental earnings was reasonable.

PENALTIES AND ATTORNEY FEES
Foster argues that the workers' compensation judge erred in failing to award penalties and attorney fees. The determination whether an employer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact and a workers' compensation judges' finding shall not be disturbed absent manifest error. Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96); 690 So.2d 792. We find no manifest error in the workers' compensation judge's denial of penalties and attorney fees in this case.

ADMISSION OF EVIDENCE
Foster contends that the workers' compensation judge erred in refusing to admit a fax from Rabalais Masonry to LWCC containing a job description for Foster's pre-injury job. We disagree.
The trial judge is accorded vast discretion concerning the admission of evidence, and his decision will not be reversed on appeal absent an abuse of that discretion. Maddox v. Omni Drilling Corp., 96-1673 (La.App. 3 Cir. 8/6/97); 698 So.2d 1022, writs denied, 97-2766, 97-2767 (La.1/30/98); 709 So.2d 706. In the present case, the workers' compensation judge found that the evidence concerning the past job was not relevant to the SEB inquiry. Foster contends that the proffered evidence demonstrates that Rabalais Masonry first contended that Foster's job could not be modified thus, suggesting that the modified job was a sham. We have reviewed the record and find that it was otherwise established that the employer did not have a modified job available in July. Even if this were not the case, the proffered evidence is not critical to the sham theory forwarded by Foster. The workers' compensation judge addressed this sham job theory with regard to evidence suggesting that Campbell only hired Foster so she could fire him. He specifically found no credence to this theory based on his judgment of Campbell's credibility and the obvious fact that Foster voluntarily left his job without even discussing his concerns with Campbell. Accordingly, we find no abuse of discretion in the ruling of the workers' compensation judge.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. All costs of this appeal are taxed to claimant-appellant, James Foster.
AFFIRMED.
APPLICATION FOR REHEARING
Before HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX and OSWALD A. DECUIR, JJ.
Rehearing denied.